
EOD
11/02/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| PETER ANDREW BROCK and | § | Case No. 06-41172 |
| CYNTHIA KAY BROCK, | § | (Chapter 7) |
| | § | |
| Debtors. | § | |
| _____ | § | |
| DT CREDIT CORPORATION f/k/a | § | |
| DRIVETIME CREDIT CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 06-4228 |
| | § | |
| PETER A. BROCK and | § | |
| CYNTHIA K. BROCK, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DT Credit Corporation f/k/a DriveTime Credit Corporation ("DTCC" or the "Plaintiff") initiated this proceeding on October 20, 2006 by filing a complaint objecting to the discharge of Peter A. Brock and Cythia K. Brock (collectively, the "Debtors") pursuant to 11 U.S.C. §727(a)(2), (3) and (7) and seeking a determination that the obligations of the Debtors to DTCC are not dischargeable in bankruptcy pursuant to her are excepted from a discharge in bankruptcy pursuant to 11 U.S.C. §523(a)(2)(A) and (a)(4). This matter is before the Court on the Motion for Summary Judgment (the "Motion") filed by the DTCC on August 21, 2007 in which the DTCC seeks summary judgment on its §727(a)(3) and (7) claim. The Debtors oppose DTCC's Motion.

**MEMORANDUM OPINION AND ORDER – Page 1**

## I. Jurisdiction

A proceeding objecting to discharge or seeking a determination of the dischargeability of a debt raises a core matter over which this Court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(I), (J) and 1334.

## II. Summary Judgment Standards

Motions for summary judgment are authorized by Rule 56 of the Federal Rules of Civil Procedure, as adopted and applied to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. The entry of a summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but must demonstrate the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986) (citing FED. R. CIV. P. 56(e)).

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. In an action seeking to deny the debtor a discharge in bankruptcy, the objecting creditor has the burden of proof under a preponderance of

the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Thus, in this case, DTCC "must support its motion with credible evidence--using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 331.

Here, DTCC's Motion, the Debtors' response, and the admissible evidence submitted by the parties establish the following body of relevant, uncontested facts:

### III. Uncontested Facts

DTCC is the servicing arm of DT Acceptance Corporation. DTCC services retail installment contracts transferred to DT Acceptance Corporation from DriveTime Car Sales, Inc. ("DriveTime"). DTCC contracts with collection agencies. The collection agencies engage in collection efforts on delinquent DriveTime accounts and, in return, DTCC pays the collection agencies a commission, which is usually a percentage of the total funds collected by the collection agency.

On or about December 4, 2002, DTCC contracted with BKB & Associates ("BKB") to perform collections for delinquent accounts around the country. The Debtors are the principals, directors, and officers of BKB. The Debtors are also the sole shareholders in BKB. Cynthia Brock is the President of BKB, and Peter Brock is the Vice President.

Pursuant to the various contracts between DTCC and BKB (collectively, the "Contract"), DTCC forwarded BKB the names, social security numbers, and last known contact information for the delinquent customers accounts on which BKB was hired to perform collection activities. Information was also given to BKB regarding each of the customers' debts owed to DTCC, including the type of loan issued and the amount owed.

BKB then uploaded this information into a debt management database called "DebtMaster." As collections were made on these customers' accounts, BKB updated the customers' accounts in DebtMaster to reflect payments made and settlements reached.

In paragraph 16 of the most recent Contract executed on September 7, 2005, BKB agreed "to remit to [DTCC] all collections, Gross of Agency fees, on a monthly basis together with an accounting of all affected accounts." Paragraph 10 of the Contract provided that DTCC or BKB could terminate the Contract at any time. Paragraph 10 required BKB to return all accounts to DTCC by the date of termination and to "provide a listing of all said accounts, payments and or [sic] partial payments with commission fee schedules for each said account."

The Contract executed on September 7, 2005 differed from the prior Contracts by inserting a provision regarding BKB's duty to keep information about DTCC's customers and their accounts "strictly confidential." Paragraph 4 referenced the Gramm-Leach-Bliley Act (which is also known as the Financial Modernization Act of 1999) and its implementing regulations. Paragraph 4(b) specifically required BKB to implement and maintain "appropriate administrative, technical, and physical safeguards" to ensure the confidentiality of customer information and to protect against unauthorized access to customer information.

In early July 2006, the IRS levied BKB's bank accounts, and BKB ceased doing business. According to DTCC, BKB was handling approximately 6,700 open accounts at this time. DTCC further asserts that BKB had information on approximately 30,000 DTCC customers and their accounts stored on its DebtMaster system due to the Debtors' extended business relationship with DTCC.

**MEMORANDUM OPINION AND ORDER** – Page 4

DTCC's regional loan manager visited BKB's office on July 10, 2006. He reported that BKB's office was locked and completely empty. The Debtors dispute the accuracy of this report, asserting that the office contained computers, copiers and office furniture. The Debtors further assert that these items remained in BKB's office and were observed by the Chapter 7 trustee upon BKB's bankruptcy filing.

The Debtors filed their petition for relief under Chapter 7 of the Bankruptcy Code on July 28, 2006. On the same day, BKB filed a separate petition for relief under Chapter 7 of the Bankruptcy Code.

Shortly prior to filing for bankruptcy, the Debtors destroyed certain of BKB's documents. According to the Debtors, these documents consisted of customer credit reports and customer personal financial information. The Debtors assert that Paragraph 4(b) of the current Contract required the destruction of these documents and that, in any event, the terms of the Contract do not entitle DTCC to receive any personal customer information acquired by BKB in the course of its collection efforts.

In connection with BKB's bankruptcy case, the Debtors provided the Chapter 7 trustee with a computer. Mr. Brock informed the Chapter 7 trustee and his counsel that this computer contained the financial records and data of BKB. Mr. Brock further informed the Chapter 7 trustee and his counsel that the computer contained the software program DebtMaster, which stored certain financial information used by BKB in its collection business.

In an affidavit attached to DTCC's motion, counsel for the Chapter 7 trustee states that he has been unable to locate any financial information on the computer or to access any information through DebtMaster. The Debtors dispute the veracity of this affidavit,

asserting in the affidavits attached to their opposition to the Motion that "the CPA firm Lain Faulkner was able to prepare the 2006 corporate tax return from the information on the same computer." The Debtors contend that the DebtMaster program was functional when they provided the Chapter 7 trustee with the computer and they state that no one has contacted them for any help with accessing the DebtMaster program or other software programs.

DTCC alleges that, in early fall 2006, it began receiving calls from DriveTime customers that had been making payments on accounts handled by BKB. These customers inquired as to why payments they had made to BKB were not reflected on the statements they had recently received. In its Motion, DTCC suggests that the Debtors were converting DTTC's funds and that they deliberately destroyed BKB's books and records in order to prevent DTCC or the Chapter 7 trustee from discovering the extent of their conversion of DTCC's funds. In the affidavits attached to their opposition to the Motion, the Debtors deny that they converted any of DTCC's payments.

## IV. Discussion

Section 727 of the Bankruptcy Code provides that a bankruptcy court must grant a discharge to a Chapter 7 debtor unless one or more of the specific grounds for denial of a discharge listed in subparagraphs (1) through (10) are proven to exist. The provisions governing denial of a debtor's discharge are construed liberally in favor of the debtor and strictly against the party challenging the debtor's right to a discharge. *Friendly Finance Discount Corp. v. Jones (In re Jones)*, 490 F.2d. 452 (5th Cir. 1974). Furthermore, under Rule 4005 of the Federal Rules of Bankruptcy Procedure, the burden of proof with respect to all elements is on the party objecting to discharge.

Section 727(a)(3) requires debtors to maintain records in order to obtain a discharge in bankruptcy. *See, e.g., In re Esposito*, 44 B.R. 817 (Bankr. S.D.N.Y. 1984). Section 727(a)(3) specifically provides as follows:

> The court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

11 U.S.C. §727(a)(3).[1] Thus, in this case, DTCC must establish by a preponderance of the evidence *either* that the Debtors failed to keep or preserve recorded information, including books, documents, records and papers, *or* that the Debtors engaged in an act of destruction, mutilation, falsification or concealment of such recorded information. If DTCC's burden is satisfied, the burden of proof shifts to the Debtors to prove that the inadequacy in keeping or maintaining records is justified under the circumstances of this case. *See Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003) (the debtor's explanation for inadequate books and records must be satisfactory).

Section 727(a)(7) extends the basis for denial of discharge to a debtor's misconduct in a substantially contemporaneous related bankruptcy case. Section 727(a)(7) provides that "the Court shall grant a debtor a discharge, unless -- . . . the debtor has committed any act specified in paragraph (2), (3), (4), (5) or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." Thus, in this case, a valid claim under §727(a)(7) exists, and the

---

[1] Section 727(a)(3), unlike the other subsections of §727, does not require a showing of intent or that the complained of act or acts were knowing and fraudulent. *See, e.g., In re Potter*, 88 B.R. 843, 848 (Bankr. N.D.Ill. 1988) ("The question is not why doesn't the debtor have adequate books and records but rather simply does the debtor have adequate books and records").

Debtors may be denied a discharge in their own personal bankruptcy case, if DTCC can establish that the Debtors violated §727(a)(3) by destroying the books and records from which BKB's financial condition or business transactions might be ascertained. *See, e.g., In re Powell*, 88 B.R. 114 (Bankr. W.D. Tex. 1988) (jewelry business was "insider" of Chapter 7 debtor husband, and, thus, failure of company to account for deterioration of its inventory or preserve its records warranted denial of debtor-husband's discharge); *Tucker v. Devine (In re Devine)*, 11 B.R. 487 (Bankr. D. Mass. 1981) (debtor who was an insider of a bankrupt corporation was denied a discharge after failing to produce books and records for the corporation).

It is a "basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). Here, having considered the Motion and the Debtors' response, and having reviewed the parties' arguments and admissible evidence, the Court finds that the Plaintiff has failed to establish each element of §727(a)(3) or (a)(7) as a matter of law. Genuine issues of material fact exist as to whether the Debtors destroyed books and records from which their financial condition and the financial condition of BKB could be determined, among other things. The Court, therefore, concludes that DTCC is not entitled to judgment as a matter of law and that DTCC's Motion should be denied. Accordingly, it is

**ORDERED** that the Motion for Summary Judgment [Docket No.25] filed by DTCC shall be, and it is hereby, **DENIED**

Signed on 11/2/2007

_____ SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**MEMORANDUM OPINION AND ORDER** – Page 8